IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CHS/COMMUNITY HEALTH SYSTEMS, INC. and CHSOSC, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | NO. 3:20-cv-00163 |
| v. | ) ) ) | JUDGE RICHARDSON |
| MEDICAL UNIVERSITY HOSPITAL AUHTORITY, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion to Dismiss and Memorandum in Support (Doc. No. 27, "Motion").[1] Plaintiffs have responded (Doc. No. 28). Defendant has replied. (Doc. No. 29). The Motion is ripe for review.

For the reasons discussed herein, the Court will deny Defendant's Motion.

**BACKGROUND**[2]

The present lawsuit arises out of the Medical University Hospital Authority ("Defendant" or "Defendant MUHA")'s breaches of an asset purchase agreement ("APA") entered into between Plaintiffs and Defendant. (Doc. No. 26). The APA constituted an agreement for Plaintiffs to sell, and Defendant to purchase, substantially all of the assets of four hospitals, as well as the sale of certain related businesses, clinics, facilities, and real property. (*Id.* at 9). Through the terms of the

---

[1] Defendant filed its Motion and Memorandum in the same document, instead of in separate documents as required by the local rule. L.R. 7.01(a)(2).

[2] The facts herein are taken from the Amended Complaint, which is the operative complaint in this matter. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000).

1

APA, Defendant also agreed to enter into a Transition Services Agreement ("TSA") with Plaintiff's affiliate. (*Id.* at 2).

Plaintiffs allege that Defendant breached the APA in several ways, including: 1) failure to pay the full purchase price under the APA, including a net working capital adjustment, 2) failing to forward correspondence relating to seller cost reports and remit funds received, and not remitting all misdirected funds, and 3) breaching a transition services agreement by inaccurately reporting its collected accounts receivable and not paying the amount of service fees owed. (*Id.*).

This matter was filed in Williamson County Chancery Court and removed to this Court. (Doc. No. 1).

## LEGAL STANDARD

Rule 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction."[3] *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "Subject matter

---

[3] Defendant does not clarify in its Motion the subsection of Fed. R. Civ. P. 12(b) under which it moves to dismiss, instead merely arguing that it is entitled to dismissal based on the Eleventh Amendment and sovereign immunity. (Doc. No. 27 at 1). This issue is not one of mere formality, because a motion under subsection (b)(6) portends dismissal on the merits and thus with prejudice while motions under other subsections (including (b)(1)) portend dismissal without prejudice. The case law is conflicted regarding the subsection under which such a motion should be brought in the Sixth Circuit. *E.g.*, *Martinson v. Regents of Univ. of Michigan*, 562 F. App'x 365, 370 (6th Cir. 2014) (employing both 12(b)(1) and 12(b)(6)); *Castanias v. Lipton*, No. CIV.A. 11-296-HJW, 2011 WL 3739035, at *4 (S.D. Ohio July 14, 2011), *report and recommendation adopted*, No. C-1-11-296, 2011 WL 3705971 (S.D. Ohio Aug. 24, 2011) (same); *Uttilla v. City of Memphis*, 40 F. Supp. 2d 968, 970 (W.D. Tenn. 1999), *aff'd sub nom. Uttilla v. Tennessee Highway Dep't*, 208 F.3d 216 (6th Cir. 2000) (considering a facial challenge under 12(b)(1)); *Seider v. Hutchison*, No. 3:06-CV-215, 2009 WL 2430824, at *5 (E.D. Tenn. Aug. 5, 2009) ("The Sixth Circuit has recognized that " '[w]hile the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power,' the defense 'is not coextensive with the limitations on judicial power in Article III.' Thus, the Court does not believe that dismissal pursuant to Fed. R. Civ. P. 12(b)(1) would be proper based on the Eleventh Amendment. However, Defendant [] has also moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the claims against him, which permits dismissal when there is an unsurmountable bar on the face of the complaint." (quoting *Nair v. Oakland County Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006) (internal citation omitted)); *U.S. ex rel. Moore v. Univ. of Michigan*, 860 F. Supp. 400, 402 (E.D. Mich.

jurisdiction is always a threshold determination." *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007).

There are two types of motions to dismiss for lack of subject-matter jurisdiction: facial and factual attacks. *Gentek Bldg. Products, Inc. v. Sherman-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack questions merely the sufficiency of the pleading. When reviewing a facial attack, a district court takes the allegations in the complaint as true. *Id.* If those allegations establish federally-cognizable claims, jurisdiction exists. *Id.* A factual attack instead raises a factual controversy concerning whether subject-matter jurisdiction exists. *Id.*

Where there is a factual attack on the subject-matter jurisdiction of the court under Fed. R. Civ. P. 12(b)(1), no presumptive truthfulness applies to the complaint's allegations; instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist. *Gentek Bldg. Products, Inc.*, 491 F.3d at 330. "[T]he district court has considerable discretion in devising procedures for resolving questions going to subject

---

1994) (when motion to dismiss on Eleventh Amendment grounds was brought under both 12(b)(1) and (12)(b)(6), noting that "[a] complaint that is barred by the Eleventh Amendment fails to state a claim upon which relief can be granted, and hence, should be dismissed by this Court. Fed. R. Civ. P. 12(b)(6)."); *Darwall v. Michigan Dep't of Corr.*, 933 F.2d 1007 (6th Cir. 1991) (finding dismissal on Eleventh Amendment grounds proper when brought solely under 12(b)(6)).

However, it has been the practice (a prudent one, in the view of the undersigned) of this Court to view challenges to jurisdiction under the Eleventh Amendment as factual challenges under 12(b)(1). As neither party has briefed this issue, in accordance with this Court's precedent the Court will construe the Motion as making a 12(b)(1) factual attack. *Dunn v. Spivey*, No. 2:09-0007, 2009 WL 1322600, at *3 (M.D. Tenn. May 11, 2009); *Gaffney v. Kentucky Higher Educ. Student Loan Corp.*, No. 3:15-CV-01441, 2016 WL 3688934, at *2 (M.D. Tenn. July 12, 2016); *Hornberger v. Tennessee*, 782 F. Supp. 2d 561, 563 (M.D. Tenn. 2011); *Hemenway v. 16th Judicial Dist. Attorney's Office*, No. 3:15-CV-00997, 2020 WL 6364486, at *3 (M.D. Tenn. Oct. 29, 2020); *see also Giorgadze v. Tennessee Tech. Ctr.*, No. 2:06CV264, 2007 WL 2327034, at *2 (E.D. Tenn. Aug. 10, 2007).

3

matter jurisdiction[.]" *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 327 (6th Cir. 1990). The Sixth Circuit has noted that:

> The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. Pro. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977)).

In making its decision, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts.[4] *Gentek Bldg. Products, Inc.*, 491 F.3d at 330; *see also Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) ("In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits."); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1192 (M.D. Tenn. 2017) (discussing *Gentek*).

Defendant here lodges a factual attack on subject-matter jurisdiction. "An assertion of Eleventh Amendment sovereign immunity, as has been made by the defendants here, constitutes a factual attack." *Dunn v. Spivey*, No. 2:09-0007, 2009 WL 1322600, at *3 (M.D. Tenn. May 11, 2009); *see also Gaffney v. Kentucky Higher Educ. Student Loan Corp.*, No. 3:15-CV-01441, 2016 WL 3688934, at *2 (M.D. Tenn. July 12, 2016); *Giorgadze v. Tennessee Tech. Ctr.*, No.

---

[4] Neither party has requested an evidentiary hearing or pointed the Court to additional evidence they might submit at such a hearing. The Court therefore exercises its discretion to rule on the present Motion without an evidentiary hearing. *See e.g.*, *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 327 (6th Cir. 1990).

4

2:06CV264, 2007 WL 2327034, at *2 (E.D. Tenn. Aug. 10, 2007). Defendant bears the burden of proving that it is entitled to immunity under the Eleventh Amendment. *Town of Smyrna, Tenn. v. Mun. Gas Auth. of Georgia*, 723 F.3d 640, 650 (6th Cir. 2013); *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002).

**DISCUSSION**

Defendant argues that this case must be dismissed because (according to Defendant) Defendant is entitled to Eleventh Amendment immunity as a state agency. (Doc. No. 27). Plaintiffs respond that 1) Defendant is not entitled to immunity, and 2) alternatively, if Defendant is (otherwise) entitled to immunity, Defendant has waived its immunity. (Doc. No. 28). In response, Plaintiffs primarily argue that Defendant is not entitled to immunity because Defendant is not a state agency (or "instrumentality") inasmuch as a judgment against Defendant would not be a judgment against the State of South Carolina. (Doc. No. 28 at 5). Plaintiffs argue that the Court should consider Defendant to be not a state agency, but rather a political subdivision, akin to a county or municipality. (*Id.*). In reply, Defendant argues that Plaintiffs ignore the language in the statute creating Defendant and base their arguments on inapplicable case law. (Doc. No. 29).

Because the Court finds that Defendant is not entitled to immunity, the Court does not reach the question of whether immunity has been waived.

A. <u>Whether Defendant is protected by immunity</u>

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Under the Eleventh Amendment, states and state agencies or departments have sovereign immunity from suit in federal

5

court.[5] *Boler v. Earley*, 865 F.3d 391, 409–10 (6th Cir. 2017) (citing *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc) and *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). However, political subdivisions, such as counties and cities, are not entitled to Eleventh Amendment immunity. *Ernst*, 427 F.3d at 355.

The Sixth Circuit has summarized the factors to consider when determining whether an entity is an arm of the state:

> (1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government.

*Kreipke v. Wayne State Univ.*, 807 F.3d 768, 775 (6th Cir. 2015) (quoting *Ernst*, 427 F.3d at 359). The factors are not "a checklist," and they should be "weighed and balanced against each other based on the unique circumstances of the case." *Id.* at 778. "The only factor that gets special weight is the state's potential liability for judgment, which . . . creates a strong presumption that [an entity] is a state actor." *Id.* As previously noted, "[w]hether an entity qualifies is a question of federal law and the entity asserting the defense bears the burden of proof." *Town of Smyrna, Tenn.*, 723 F.3d at 650; *Gragg*, 289 F.3d at 963.

The undersigned here will reiterate what he has said previously about multi-factor tests generally:

> "The undersigned has noted on multiple occasions that multi-factor (or balancing) tests, though often having considerable desirability and merit, tend to foster outcomes that are unpredictable on the front end, given such tests' subjectivity." *Memphis A. Phillip Randolph Inst. v. Hargett*, No. 3:20-CV-00374, 2020 WL 5095459, at *16 (M.D. Tenn. Aug. 28, 2020) (quoting Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1050 (1997)

---

[5] States, agencies, instrumentalities, and "arms of the state" all are terms that generally refer to an entity that is entitled to immunity under the Eleventh Amendment. The Court uses these terms interchangeably, as appropriate, to refer to such an immune entity.

> (proposing a multi-factor test to resolve civil limitations issues, while conceding that when courts "apply[ ] a multi-factor test, [it is] always an unpredictable endeavor") and Eli J. Richardson, *Taking Issue with Issue Preclusion: Reinventing Collateral Estoppel*, 65 Miss. L.J. 41, 95 (1995) (proposing multi-factor test to resolve collateral estoppel issues, while conceding that its drawback is that it "would produce unpredictable resolutions of collateral estoppel issues, in that it is so flexible and calls for very subjective judicial determinations")). This reality tends not to bode well for the prospects of a multi-factor test to resolve a question as a matter of law at the summary judgment stage.

*Acosta v. Peregrino*, No. 3:17-CV-01381, 2020 WL 5995049, at *6 (M.D. Tenn. Oct. 9, 2020). The undersigned is well aware that room for disagreement exists with respect to the result of the outcome of the multi-factor test to be employed here. But after weighing each factor in turn, the Court believes that they collectively militate substantially against a finding that Defendant is a state agency.

1. <u>South Carolina's potential liability for a judgment against Defendant</u>

Plaintiffs argue that Defendant is not entitled to Eleventh Amendment immunity because the debts of Defendant are not the debts of the State of South Carolina. (Doc. No. 28 at 2, 5). Defendant does not respond to this point and seems to agree tacitly that the first factor weighs against it. Defendant instead argues that the multi-factor "arm of the state" test does not apply because there is simply no reason to resort to it at all, since it is entirely clear from the relevant state statute that Defendant is a state agency. (Doc. No. 29 at 3-4). Defendant argues in the alternative that if the "arm of the state" test does apply, its final three factors (which Plaintiffs do not address) indicate that Defendant is entitled to immunity under the Eleventh Amendment.

This Court has previously explained the appropriate analysis when determining whether a state has potential liability under the first factor:

> the Sixth Circuit has clearly held that "it is the state treasury's potential legal liability for the judgment, not whether the state treasury will pay for the judgment in that case, that controls the inquiry." *Ernst*, 427 F.3d at 359 (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997)). Accordingly, the court must ask

7

Case 3:20-cv-00163   Document 43   Filed 03/15/21   Page 7 of 19 PageID #: 307

"whether, hypothetically speaking, the state treasury would be subject to 'potential legal liability' if the [relevant entity] did not have the money to cover the judgment." *Id.* at 362 (quoting *Doe*, 519 U.S. at 431). In practice, the formal approach embraced by *Ernst* has proven a doubled-edged sword for entities seeking to assert sovereign immunity. On one hand, a plaintiff cannot overcome the State's potential liability merely by showing that the specific claim at issue can be satisfied with the entity's own funds. *Id.* On the other hand, however, an entity cannot rely on a so-called "reimbursement theory" to transform its own liability into a state liability based merely on "the state's willingness . . . to reimburse the entity for damages paid as a result of the judgment." *Lowe v. Hamilton Cty. Dep't of Job & Family Servs.*, 610 F.3d 321, 326 (6th Cir. 2010). Rather, cases involving entities with independent revenue sources have typically looked to whether "a State's constitution and statutory law make the State responsible for funding [the entity's] programs" in the event of a shortfall. *Ernst*, 427 F.3d at 364. *Ernst*, for example, relied on a statutory provision requiring the state legislature to "annually appropriate to the retirement system the amount [of money needed] . . . to reconcile the estimated appropriation made in the previous fiscal year with the actual appropriation needed to adequately fund the retirement system for the previous fiscal year," Mich. Comp. Laws § 38.2302(1), as well as a constitutional provision, Mich. Const. art. 9, § 24, making that duty a " 'contractual obligation' owed by the State to each retiree." *Ernst*, 427 F.3d at 360 (citing *Musselman v. Governor*, 533 N.W.2d 237, 246 (1995) ("We hold that the state is obligated to prefund health care benefits under art. 9, § 24.")); *see also Kreipke v. Wayne State Univ.*, 807 F.3d 768, 776 (6th Cir. 2015) (finding sovereign immunity where constitutional and statutory provisions required state to fund university), *petition for cert. filed*, Case No. 15-1419 (U.S. May 19, 2016).

While *Ernst* focuses on the formal relationship between the state and the entity at issue, the Sixth Circuit's subsequent cases make clear that factual considerations are not irrelevant to the court's inquiry. In some cases, the relevant funding and enabling statutes alone may not "conclusively determine" whether the State potentially will be liable for a judgment against the entity. *See Barachkov v. 41B Dist. Court*, 311 Fed. Appx. 863, 867 (6th Cir. 2009). In such instances, a factual record of the concrete fiscal details of the entity's operations may be relevant. *See, e.g.*, *Lowe*, 610 F.3d at 326–28 (holding that statutes cited by entity, without additional factual support, were insufficient to carry burden of showing potential state liability); *Perry v. Se. Boll Weevil Eradication Found.*, 154 Fed. Appx. 467, 473 (6th Cir. 2005) (holding that the first *Ernst* factor disfavored application of sovereign immunity because "there is no indication that the state contributes to the fund" earmarked for funding entity).

*Gaffney*, 2016 WL 3688934, at *3.

The statute creating Defendant specifically states that the debts of Defendant are not the debts of the State of South Carolina: "Any guarantee or indebtedness of the authority [MUHA]

8

shall not create an obligation of the State, nor shall such guarantee or indebtedness be considered a debt against the general revenue of the State." S.C. Code Ann. § 59-123-60(E)(3)(c). Unsurprisingly, the Sixth Circuit has found a similar statutory provision to be evidence that the relevant state was not liable for the judgment. *Perry v. Se. Boll Weevil Eradication Found.*, 154 F. App'x 467, 473 (6th Cir. 2005) (not finding Eleventh Amendment immunity when "any debt of the cotton growers' organization 'shall not constitute a debt of the state or any department, agency, political subdivision, official, or employee of the state.'" (citing to the relevant statute)).

Additionally, it is unclear from the statute where Defendant's funding comes from. Two subsections in the statute seem to contemplate in some places that Defendant might receive funding from the state, as Defendant has the power to:

> (9) receive, expend, and control under its own name and account any appropriated funds, federal funds, donations, and grants made available to the authority; provided, however, that these funds are funds which must be used for a public purpose, and further, that the authority may not use or authorize the use of funds, property, or time to influence the outcome of an election [and . . . ]
>
> (11) prepare and submit an annual budget to the General Assembly and the Governor for review

S.C. Code Ann. § 59-123-60(E)(9), (11); *see also* S.C. Code Ann. § 59-123-70 (explaining the procedure for the board of trustees to present the budget to the state legislature). Additionally, the statute provides:

> Beginning in fiscal year 2000-2001 state appropriations to the Medical University of South Carolina for support of the Medical University hospitals and clinics shall be redirected to the Department of Health and Human Services. These funds shall be used as match funds for the disproportionate share for the hospital's federal program. Any excess funding may be used for hospital base rate increases. Beginning in fiscal year 2000-2001 and in subsequent years, the Department of Health and Human Services shall pay to the Medical University of South Carolina Hospital Authority an amount equal to the amount appropriated for its disproportionate share to the Department of Health and Human Services. This payment shall be in addition to any other funds that are available to the authority from the Medicaid program inclusive of the disproportionate share for the hospital's

9

federal program. The authority shall continue to operate the hospital as a health provider for the citizens of South Carolina and the clinical site for the education and training programs of the Medical University of South Carolina.

*Id.* at (I). Though these provisions seem to imply that Defendant may receive some funding from the State of Carolina, none of the provisions mandate the State to provide a certain amount of funding to Defendant or help Defendant in the event of a budget shortfall. In fact, on the Medical University of South Carolina ("MUSC")'s website, it states that Defendant MUHA does not receive state appropriations, while MUSC receives about 3% of its funding from the State. *MUSC Medical University of South Carolina*, https://web.musc.edu/about (last accessed March 15, 2021).[6]

As noted above, Defendant carries the burden of showing that it is entitled to Eleventh Amendment immunity. Despite this burden, Defendant has submitted no evidence or even argument to enable this Court to determine who pays judgments against Defendant; nor has it shown or even discussed any other financial considerations or arrangements that may show that this factor leans in Defendant's favor. In fact, Defendant seems to concede that this factor weighs

---

[6] The Court is able to take *sua sponte* judicial notice of the contents of a .edu website or a government website, and this website is both. *See e.g.*, *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) (taking judicial notice of contents of the Bureau of Prisons' website); *United States v. Harris*, 331 F.2d 600, 601 (6th Cir. 1964) ("The Court may take judicial notice sua sponte."); *Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 F. App'x 223, 227 (4th Cir. 2013) ("A court may take judicial notice of information publicly announced on a party's web site, so long as the web site's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" (quoting Fed. R. Evid. 201(b))); *Caner v. Autry*, 16 F. Supp. 3d 689, 693 n.3 (W.D. Va. 2014) (taking judicial notice of various facts on university .edu website); *Energy Automation Sys., Inc. v. Saxton*, 618 F. Supp. 2d 807, 810 n.1 (M.D. Tenn. 2009) ("A court may take judicial notice of the contents of an Internet website."); *Oak Ridge Envtl. Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 (E.D. Tenn. 2019) ("Information taken from government websites is self-authenticating under FED. R. EVID. 902, and courts may accordingly take judicial notice of the information found on these websites.")

against it. Meanwhile, Plaintiffs have pointed the Court to the statute itself, which indicates that the State is not liable for any judgment against Defendant. Ruling on a similar situation with lackluster evidence and argument from a defendant, this Court previously found that the first factor weighed against finding Eleventh Amendment immunity, explaining that "[i]n order to establish that the potential for state liability favors an extension of sovereign immunity, [Defendant] must show—through citation to formal legal obligations, a factual account of fiscal practice, or some combination of the two—that its liabilities are potentially liabilities of the state. It simply has not done so." *Gaffney*, 2016 WL 3688934, at *5. Defendant here has similarly not done so.

Therefore, the Court finds this first factor, which is "the most salient issue," leans strongly in favor of finding that Defendant does not qualify for Eleventh Amendment immunity. *Town of Smyrna, Tenn.*, 723 F.3d at 651.

2. <u>How the state law and state courts define the entity and the degree of state control and veto power over the entity's actions</u>

Defendant MUHA was created in the same act as was MUSC. Defendant MUHA is comprised of the board of trustees of MUSC, which acts as Defendant MUHA when the board "functions in its capacity as the governing body of the hospital." S.C. Code Ann. § 59-123-60(E). The statute specifically designates Defendant MUHA as "an agency of the State of South Carolina." *Id.*

Defendant MUHA asserts that no courts have considered whether it is entitled to Eleventh Amendment immunity, then notes that several courts have found that MUSC (which was created under the same act) is protected by Eleventh Amendment immunity. *E.g.*, *von Fox v. Med. Univ. of S.C.*, No. 2:16-CV-179-RMG-MGB, 2016 WL 8732360, at *4 (D.S.C. Feb. 12, 2016), *report and recommendation adopted sub nom. Fox v. Med. Univ. of S.C.*, No. CV 2:16-179-RMG, 2016 WL 693525 (D.S.C. Feb. 19, 2016), *dismissed sub nom. Fox v. South Carolina*, 668 F. App'x 442

11

(4th Cir. 2016); *Alsharif v. Med. Univ. of S.C.*, No. CV 2:14-4438-SB-BM, 2015 WL 13732639, at *4 (D.S.C. Oct. 21, 2015), *report and recommendation adopted*, No. CV 2:14-4438-SB, 2016 WL 270913 (D.S.C. Jan. 22, 2016); *Beryl Ming Yu You v. Tolley*, No. 2:13-CV-1683 DCN, 2014 WL 3881039, at *2 (D.S.C. Aug. 6, 2014), *aff'd*, 588 F. App'x 291 (4th Cir. 2014); *Harrison-Jenkins v. Med. Univ. of S.C.*, No. CIV.A. 2:11-2551-DCN, 2012 WL 1533046, at *5 (D.S.C. Apr. 9, 2012), *report and recommendation adopted*, No. CA 2:11-2551 DCN, 2012 WL 1534711 (D.S.C. May 1, 2012), *aff'd*, 479 F. App'x 449 (4th Cir. 2012); *Yarborough v. King*, No. CA 2:11-2602-MBS-BHH, 2011 WL 5238920, at *3 (D.S.C. Oct. 3, 2011), *report and recommendation adopted*, No. CA 2:11-2602 DCN, 2011 WL 5151757 (D.S.C. Oct. 31, 2011); *Peltier v. Metts*, No. CA 2:09-44-DCN-RSC, 2009 WL 6593943, at *3 (D.S.C. Jan. 12, 2009), *report and recommendation adopted*, No. CA 2:09-0044 DCN, 2009 WL 6593938 (D.S.C. Jan. 28, 2009), *aff'd*, 329 F. App'x 396 (4th Cir. 2009). According to Defendant, this Court should afford it the same protection afforded MUSC in these opinions. In addition to being unreported, however, these opinions do not provide much, if any, analysis regarding why MUSC is entitled to Eleventh Amendment protection.

As indicated above, Defendant explains its reliance on case law involving MUSC by contending that there is no applicable case law addressing Defendant MUHA and Eleventh Amendment immunity. (Doc. No. 27 at 4). The Court is unsure why Defendant makes this contention, as several cases have found that Defendant MUHA is entitled to Eleventh Amendment immunity. *E.g.*, *Chambers v. Med. Univ. Hosp. Auth.*, No. 2:11-CV-0261-RMG-BM, 2012 WL 2888804, at *6 (D.S.C. May 18, 2012), *report and recommendation adopted*, No. 2:11-CV-261-RMG, 2012 WL 2888802 (D.S.C. July 13, 2012); *aff'd*, 512 F. App'x 352 (4th Cir. 2013); *see also Mitchell v. Med. Univ. Hosp. Auth.*, No. CA 2:11-2028-RMG, 2013 WL 4041954, at *11 (D.S.C.

12

Aug. 7, 2013). In fact, despite Defendant's contention that no court has examined its entitlement to Eleventh Amendment immunity, one of the cases Defendant cited as an example of dismissing MUSC under the Eleventh Amendment also dismissed Defendant MUHA as a defendant to the action. *Yarborough*, 2011 WL 5238920, at *2. It might seem that Defendant missed an opportunity to call to the Court's attention compelling case law support its position. But in fact such case law would not have been compelling, because similar to the cases discussing MUSC, these opinions are unreported and provide little or no analysis of why Defendant MUHA is an agency entitled to Eleventh Amendment protection. Thus, the Court assigns them no precedential or persuasive value.

Strangely, though Defendant adamantly argues in briefing to this Court that it is an agency based on the statute and case law, Defendant is referred to instead as a "political subdivision of the State of South Carolina" in both the APA and TSA at issue. (Doc. No. 28-2). For this reason and the ones indicated in the prior two paragraphs, the Court finds that although the statute and the case law indicate that Defendant is a state agency, this does not weigh strongly in favor of finding Eleventh Amendment immunity.

The Court must also look at how much control the State exerts over Defendant, including any veto power. The statute imbues Defendant with a multitude of independent powers. Among many other things, Defendant has the powers of the Board of Trustees of MUSC, the power to make contracts, the power to issue its own bonds and pledge its own property, and the power to maintain hospital premises. S.C. Code Ann. § 59-123-60.

On the other hand, the State retains some power over Defendant. The Governor retains the power to remove board members for certain conduct (such as malfeasance, incapacity, etc.) after notice and an opportunity to be heard. *Id.* at (G). In such an instance, the governor then fills the

13

vacancy until the election process (discussed below) can be completed again. *Id.* As this Court has previously noted, "[w]hile the fact that board members cannot be removed merely at the whim of the governor allows some room for independence, the governor's removal authority is nevertheless a meaningful lever of control." *Gaffney*, 2016 WL 3688934, at *7.

The State also retains power in some other ways, such as exempting contracts entered into by Defendant from the South Carolina Consolidated Procurement Codes and Regulations, but requiring submission of a procurement policy to the State Fiscal Accountability Authority. *Id.* at (E)(3)(a). Defendant's issuance of bonds, notes, or other obligations of indebtedness is generally subject to the approval of the State Fiscal Accountability Authority. *Id.* at (E)(3)(d). Employees of Defendant are exempt from Article 5, Chapter 17 of Title 8, of the State Employee Grievance Procedure, but the statute requires the board to adopt a substantially similar procedure to be approved by the State Department Administration. *Id.* at (E)(6). Defendant's employees are state employees for the purposes of the South Carolina Retirement System, the State Health Insurance Group plans, and pursuant to the South Carolina Tort Claims Act. *Id.* Additionally, the Governor may request an audit and the General Assembly can require intervention by the State Fiscal Accountability Authority to rectify any material audit filings. *Id.* at (F). Therefore, it is apparent that "[t]he reporting duties, along with the governor's removal power, establish at least a general background of supervision and control." *Gaffney*, 2016 WL 3688934, at *7. However, as in *Gaffney*, Defendant has provided the Court with no information on day-to-day operations or the level of control exerted by the State over Defendant. Thus, the Court is limited to looking at the South Carolina statute establishing Defendant and the powers and limitations it places upon Defendant, and the statute does not show significant State oversight or veto power. *See id.* at **7-8.

Overall, the Court finds that this factor is, at best, neutral. Though the statute refers to Defendant as an "agency," the Court is careful not to ascribe to much significance to that mere label, choosing instead to look at the substance of Defendant's nature and Defendant's relationship with the state. Moreover, the APA and TSA at issue refer to Defendant as a "political subdivision," which (as noted above) is something that is certainly not the state or a state agency for Eleventh Amendment purposes. Additionally, courts in South Carolina have granted MUSC and Defendant Eleventh Amendment immunity only in unreported opinions and without substantive analysis, which the Court finds unpersuasive. Though the State of South Carolina maintains control over Defendant in some limited ways, such as the Governor's ability to remove members in certain instances, these powers seem to operate more as a "background of supervision and control" than significant control and veto power over Defendant's actions. *Gaffney*, 2016 WL 3688934, at *7. Instead of facing significant state control and oversight, Defendant appears primarily to have independent decision-making authority, such as the power to issue its own bonds and pledge its own property.

Therefore, the Court finds that this factor is neutral.

3. Whether state or local officials appoint the board members of the entity

The board of trustees (which makes up Defendant) is comprised of "the Governor or his designee, ex officio, fourteen members to be elected by the General Assembly in joint assembly and one member to be appointed by the Governor." S.C. Code Ann. § 59-123-40; S.C. Code Ann. § 59-123-50 (setting out election procedures). Therefore, the state maintains complete control over the membership of Defendant.

The Court finds that this weighs in favor of finding that Defendant is a state entity.

4. Traditional purview of state or local government

The Court has previously described how to determine whether an entity is performing a task traditionally in the purview of the state or local government:

> When applying the *Ernst* factors to a novel situation, the court is guided by the ultimate purposes underlying them.
>
> The directive to consider whether an entity's activities fall within the traditional purview of the state "stems from the importance of dignity in the origins of our sovereign immunity doctrine," because "if the agency in question carries out a long-recognized state function, it is a particular affront to a state to subject this agency to suit." *Pucci*, 628 F.3d at 764.

*Gaffney*, 2016 WL 3688934, at *9.

Defendant does not advance an argument regarding whether Defendant is operating within the traditional purview of the state. Defendant could potentially be described as having a few different primary functions: 1) general commercial and business functions, such as contracting and selling property, 2) healthcare, and 3) education (due to its relationship with MUSC). None of these are traditionally in the purview of the state government.

General commercial activities are not a function traditionally of the state government. *Town of Smyrna, Tenn.*, 723 F.3d at 651. Providing healthcare is also not a function traditionally of the state government. *See e.g.*, *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) ("[P]roviding mental health services has not been a power which has traditionally been exclusively reserved to the state."); *Gekas v. HCA Health Servs. of Tennessee, Inc.*, No. 3:17-CV-00009, 2018 WL 558827, at *5 (M.D. Tenn. Jan. 25, 2018) ("Regarding the provision of healthcare services, the Sixth Circuit has held that this is not a power which traditionally has been exclusively reserved to the state."), *report and recommendation adopted*, No. 3:17-CV-00009, 2018 WL 1150702 (M.D. Tenn. Mar. 5, 2018).

Though education is generally a function within the traditional purview of state government, when looking at an entity that similarly mixed commercial and education functions, the Court explained that:

> It is well-settled "that higher education is a function within the traditional purview of state government." *Kreipke* 807 F.3d at 779 (citations omitted), but [Defendant] . . . "is not in the business of education," 2015 WL 7889056, at *6. It is in the business of making, buying, and collecting on student loans, allegedly including many that have no apparent connection to the Commonwealth other than the fact that [Defendant] services them. [Defendant] has offered no account of why it would be an affront to the dignity of the Commonwealth for the corporation to answer for actions taken pursuant to its participation in the interstate, commercial market for servicing and collecting student loan debt, just as any private competitors must. This factor accordingly weighs against the extension of sovereign immunity to [Defendant].

*Gaffney*, 2016 WL 3688934, at *9. Therefore, the Court finds that Defendant's similarly mixed commercial and educational purposes are not a function traditionally of the state government. Additionally, the Court notes that though Defendant makes passing reference to concerns regarding its dignity, (Doc. No. 29 at 4), Defendant has not advanced any reason or explanation for why litigating this suit would be "an affront to South Carolina's dignity and sovereignty." (Doc. No. 29 at 4). The Court is aware of no such reason.

Therefore, the Court finds that this factor weighs in favor of Plaintiffs.

5. <u>Other factors</u>

The parties do not advance any additional factors, and the Court is aware of no additional factors that would affect its analysis.

Weighing all of the factors discussed above, the Court finds that the factors overall weigh in favor of finding that Defendant is not entitled to Eleventh Amendment immunity. The first and most important factor, whether the state will be responsible for a judgment against Defendant, clearly weighs against finding that Defendant is entitled to Eleventh Amendment immunity. The

17

fourth factor, whether Defendant acts in the traditional purview of the state or local government, also weighs in favor of not finding Eleventh Amendment immunity. The second factor, how the statute and state treat Defendant and the degree of state control, is neutral. Only the third factor, whether state officials appoint the board members of the entity, weighs in favor of finding that Defendant should be entitled to Eleventh Amendment immunity. This is not sufficient to tilt the scales in Defendant's favor, given the effect of the fourth factor and (paramount) first factor. The Court therefore finds that on balance, Defendant is not entitled to Eleventh Amendment immunity.

B. <u>Whether Defendant has waived immunity</u>

Plaintiffs argue in the alternative that Defendant has waived its entitlement to sovereign immunity by being an active participant in this litigation. (Doc. No. 28). Plaintiffs argue that several different actions Defendant has taken during the course of this litigation constitute waiver: 1) removing the case from state court to federal court, 2) not raising the issue of personal jurisdiction at the outset of this litigation, 3) stipulating that this Court has jurisdiction and that venue is proper, and 4) taking various other miscellaneous actions during litigation (filing counterclaims, identifying only merits-based issues in the Initial Case Management Order, requesting this Court set the case for trial, serving initial disclosure, responding to Plaintiffs' discovery, and agreeing to produce documents after the Court's entry of a protective order). (Doc. No. 28 at 7-8).

As it has found that Defendant is not entitled to Eleventh Amendment immunity, the Court declines to reach the issue of whether immunity has been waived. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) ("We prefer to address . . . the question of whether such an entity had any Eleventh Amendment immunity in the first place, since if we conclude that it had none it will be unnecessary to reach the question of waiver."); *Gaffney*, 2016 WL 3688934,

at *9 ("Because the court concludes that [Defendant] is not an arm of the state entitled to sovereign immunity, it need not consider whether [Defendant's] sovereign immunity has been waived."); *see also Escambia Cty., Fla. v. McMillan*, 466 U.S. 48, 51 (1984); *Does #1-5 v. Snyder*, 834 F.3d 696, 699 (6th Cir. 2016); *Doe v. Lee*, No. 3:16-CV-02862, 2021 WL 428967, at *32 (M.D. Tenn. Feb. 8, 2021); *Doe v. Rausch*, 461 F. Supp. 3d 747 (E.D. Tenn. 2020); *Simonian v. Hunter Fan Co.*, No. 210CV02771JPMCGC, 2011 WL 13116674, at *3 (W.D. Tenn. May 19, 2011).

## **CONCLUSION**

For the reasons discussed herein, the Court will deny Defendant's Motion.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE